TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2931
Facsimile: (213) 894-6296
E-mail: Monica.Tait@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUCINDA JANE WEIST MANERA,<br><br>Defendant. | No. 2:25-CR-00863-DSF<br><br><u>GOVERNMENT'S SENTENCING POSITION AS TO DEFENDANT MANERA; EXHIBITS</u><br><br>Date: October 5, 5026<br>Time: 8:30 a.m.<br>Place: Courtroom 7D |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Monica E. Tait, hereby files its sentencing position in this matter.

This document is based on the attached memorandum of points and

//

authorities and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 21, 2026

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

/s/ Monica E. Tait
MONICA E. TAIT
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**SENTENCING MEMORANDUM**

## I. INTRODUCTION

Defendant Lucinda Jane Wiest Manera ("Manera" or "defendant") will soon appear for sentencing on her crime in violation of 18 U.S.C. § 3 of being an accessory after the fact to Bernhard Eugen Fritsch's obstruction of justice. Knowing that he had unlawfully fled the district in violation of 18 U.S.C. § 1503(a) to avoid being detained, and thereafter sentenced, on his $26-million wire fraud scam, Manera admits that she helped her then-boyfriend, Fritsch, "with the specific purpose and design to hinder and prevent Fritsch's apprehension and punishment." Plea agreement (Dkt. 50) at 7-8. Fritsch fled and hid in Mexico, and ultimately made it to Germany, with Manera's help. The government recommends an 18-month sentence of imprisonment, representing a small downward variance from the advisory guidelines range. In addition, the Court should order a 3-year term of supervised release, a $100 special assessment, and a $3,500 fine.

## II. OFFENSE CONDUCT

Defendant, who was at all relevant times also known as "Lucy Weist," and Fritsch were both residents of Los Angeles County, within the Central District of California. Defendant and Fritsch were in a romantic relationship. (Plea Agreement at 6.)

On April 3, 2025, in the Central District of California, Fritsch was found guilty by a jury and convicted of one count of wire fraud in violation of Title 18, United States Code, Section 1343, in the matter United States v. Bernhard Eugen Fritsch, case number CR 17-520-DSF (the "Wire Fraud Prosecution"). Defendant was present in the courtroom when the guilty verdict was read in the Wire Fraud

Prosecution. At the time of the guilty verdict, Fritsch was not in custody, but he was subject to conditions imposed by the Court in the Wire Fraud Prosecution, including the condition that he could not leave the United States without permission from that Court. Immediately after the verdict was read, the Court requested briefing from the parties regarding whether Fritsch should be placed in custody pending sentencing and indicated to Fritsch that he must not leave the jurisdiction. (Id.)

As defendant then knew, a hearing relating to Fritsch's potential remand into custody would take place on June 2, 2025, and Fritsch was later to be sentenced in the Wire Fraud Prosecution. (Id.)

A message between defendant and one of her daughters on Wednesday, May 29, 2025[1] (seized from one of defendant's devices) indicates defendant knew that Fritsch was planning to leave town on the weekend despite his Monday, June 2, 2025, hearing. See Exhibit 1 (Daughter[2]: "[C]ould the guys and I stay at the malibu house tomorrow night still?[,]" referring to Fritsch's Malibu home (see PSR ¶ 90)); Exhibit 2 (redacted stipulation that "franks" is defendant's daughter). Defendant responded it was not a good time for a stay, and indicated "B [referring to Fritsch] may be leaving for a business trip on Saturday or Sunday . . . [¶] If you really want to come home then let me know and maybe you and I can stay in Westlake Inn while B preps for his trip." (See Exhibits 1, 2 (redacted excerpt of

---

[1] If the seized messages on Exhibit 1 are in UTC as they appear to be (indicating May 30, 2025 as the date), the Pacific time conversion is May 29, 2025 at around 9:01 a.m.

[2] Defendant has unredacted versions of this document from discovery.

messages; redacted stipulation regarding identity of "franks" as defendant's daughter.)

Next, on May 31, 2025, defendant paid $3,500 via Zelle to "Individual 1." (Presentence Report "PSR" at ¶ 14.) Individual 1 had arranged that day by phone to help Fritsch leave the country. (PSR at ¶¶ 12-13.) Defendant's iPhone, searched by FBI agents in September 2025 pursuant to a search warrant, contained a contact for Individual 1's true phone number, pairing Individual 1's true first with a false last name (making the contact appear to be for a well-known local businessman in this district). (PSR at ¶ 14.) Also on May 31, 2025, defendant bought two burner phones at Best Buy, and activated one of those phones number using a variant of her true name ("Lucy Weist"). (PSR at 16.) Defendant remained in contact with Fritsch during the summer of 2025. (PSR at ¶ 16.)

Between on or about June 1 and June 2, 2025, Fritsch corruptly influenced, obstructed, and impeded the due administration of justice, in violation of 18 U.S.C. § 1503(a), as follows: without obtaining permission from the Court in the Wire Fraud prosecution, Fritsch left the Central District of California by car and crossed the border to Mexico, intending to avoid being taken into custody at the June 2, 2025, hearing and serving any sentence of imprisonment the Court in the Wire Fraud Prosecution might impose against Fritsch. (Plea Agreement at 7.)

More details of these events are set forth in the Presentence Report.[3] On June 1, 2025, Individual 1 flew to Los Angeles, rented a

---

[3] The government's investigation into Fritsch's activity is ongoing. Fritsch, currently a fugitive believed to be residing in Germany, is likely monitoring these proceedings.

car, came to defendant's Westlake Village home, met Fritsch and defendant, and drove away with Fritsch towards Arizona, heading for Mexico. (PSR at 9-18.) After meeting Individual 2 in Arizona, Fritsch was driven across the Mexican border on June 2, 2025. (PSR at 18.[4]) Fritsch ultimately stayed around three months at Individual 2's home in Mexico. (Id.)

Beginning on or about June 2, 2025 and continuing to on or about September 26, 2025, in Los Angeles County, within the Central District of California and elsewhere, defendant, knowing that Fritsch committed an offense against the United States, namely, obstruction of justice, in violation of Title 18, United States Code, Section 1503(a), relieved, comforted, and assisted the offender, Fritsch, with the specific purpose and design to hinder and prevent Fritsch's apprehension and punishment. (Plea agreement at 7.)

For example:

(a) On June 4, 2025, knowing that Fritsch had left the jurisdiction, that Special Agents of the Federal Bureau of Investigation ("FBI") had contacted her searching for Fritsch, and that an arrest warrant had been issued for Fritsch after he failed to appear at the June 2, 2025 hearing, defendant falsely told the FBI agents that the last time she spoke to Fritsch was June 1, 2025, and she was aware of only one telephone number for Fritsch, when, in truth and in fact, as defendant then well knew, defendant had spoken to Fritsch on June 3, 2025, and Fritsch had called her on June 3,

[4] Individual 2 agrees that he drove Fritsch across the border, but disputes that he requested $5,000 (see PSR ¶ 15); he claims to have been misled about the arrangement with Fritsch.

2025 from a different telephone number than the number she provided the FBI. (Id.)

(b) Between approximately June 13, 2025 and September 12, 2025 defendant made at least 10 payments to H.Y. totaling approximately $7,475, knowing that Fritsch was hiding in Mexico at H.Y.'s home, and intending that H.Y. would continue to house Fritsch in Mexico as long as Fritsch wished to hide there to prevent his apprehension and punishment. (Id. at 8.) Manera concealed these payments by including statements in the payment memo lines claiming they related to furniture purchases. (PSR at ¶ 22.)

(c) On approximately September 24, 2025, defendant authorized a charge to her bank account of approximately $534.23 for Fritsch to stay at a hotel in Mexico. (Plea Agreement at 8.) Fritsch by then had been detained in connection with Mexican deportation proceedings, but was quickly released from custody (hence the hotel charge). (PSR ¶ 25-27).

And, (e) on approximately September 26, 2025, knowing that Fritsch was German, had been contacted by Mexican authorities, and wanted to leave Mexico and travel to Germany, defendant searched the Internet on Fritsch's behalf for information on the subject "i'm in Mexico and need my german embassy to come get me." (Plea Agreement at 8.)[5] Manera's text messages with friends express her dismay at Fritsch's apprehension by Mexican authorities, her arranging for his

[5] Defendant had travelled to Germany on or about September 16, 2025, and returned September 26, 2025, the day she was arrested in connection with this case. (PSR ¶ 24, 30.) During her LAX interview with FBI agents, she denied knowing Individuals 1 and 2, even though she had met both of them. (PSR ¶¶ 17, 23, 30.)

hotel after his release, and her desperation to get him from Mexico to Germany. (PSR at 9, n.1.)

Fritsch eventually made it to his native Germany. (PSR ¶ 31.)

## III. CONCURRENCE WITH PRESENTENCE REPORT

The Presentence Report correctly calculates defendant's advisory guidelines offense level as 16, which is consistent with the parties' plea agreement:

| | | |
|---|---|---|
| Base Offense Level: | 21 | [U.S.S.G. §§ 2J1.2(c)(1) and 2X3.1(a)(1); the same as to Fritsch's underlying offense, plus U.S.S.G. §§ 2B1.1(a)(1), (b)(1)(L), (b)(2)(A)(i), (b)(10)(C), 3C1.1, 4C1.1] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1(a), (b)] |
| Zero-point offender: | -2 | [U.S.S.G. § 4C1.1] |
| Total Offense Level: | 16 | |

PSR ¶¶ 43-62; Plea agreement at pp. 9-10.[6]

## IV. SENTENCING RECOMMENDATION

Defendant's actions were serious. Right after he fled, she lied to the FBI about Fritsch's phone number and her contact with him. She paid $7,475 in multiple, repeated payments to Individual 2, the man at whose home Fritsch was hiding in Mexico. Showing consciousness of her guilt and, likely believing the government might

[6] The government has the following further comments on the PSR:

Paragraph 10 refers to Fritsch's conviction in April 2025 and closes with, "[a]t the time, the Court determined that the total offense level for the Wire Fraud Prosecution was 33." The quoted sentence actually happened at Fristsch's October 2025 sentencing.

Paragraphs 19 and 20 incorrectly suggest that the FBI agents concur that Manera actually "drove to Fritsch's residence to conduct a check" for him on June 2, 2025, and that Manera in fact contacted Verizon on June 4, 2025, about Fritsch's telephone activity. Instead, these are Manera's unverified claims.

investigate her, she concealed those payments with fake memo entries on her bank records. She paid for Fritsch's hotel room in Mexico after he was almost deported from that country, flew to Fritsch's home country, Germany, and researched how to get Fritsch to Germany as well, knowing from the Mexican immigration action that Fritsch's location was by then known to the government. While she will likely claim to the court that she did not know on June 1, 2025, that Fritsch would leave the jurisdiction, that claim is not credible. On May 31, 2025, defendant paid the person who would fly to L.A. the next day to transport Fritsch across the border, and she purchased burner phones for herself and presumably Fritsch the same day; she met with the driver and Fritsch at her home on June 1, 2025; and she knew in advance (because she told her daughter so) that Fritsch was planning to leave on a trip "Saturday or Sunday," despite his court hearing on Monday.

As a result of defendant's and Fritsch's actions, a defendant convicted after a 3-week trial fled the country, successfully hid in Mexico for several months, and has (so far) escaped justice by further fleeing to a country that will not extradite him. Given defendant's lengthy and extensive participation in helping to conceal Fritsch over the entire summer of 2025, a custodial sentence is needed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Moreover, a custodial sentence here is likely "to afford adequate deterrence to criminal conduct," so that

family members of other defendants will think twice about breaking the law to help their fugitive loved ones.[7]

In mitigation, defendant played only a supporting role in Fritsch's escape and Mexican sojourn. Moreover, she was under the romantic influence of a charming, skilled liar who had already conned a highly experienced investor into investing $22 million over the course of two years, obtained millions more from other investors, and fooled numerous StarClub employees into believing Fritsch's stack of lies promoting StarClub as a promising tech company.

On balance, the government believes that an 18-month custodial sentence (representing a 1-level downward variance to the low end of offense Level 15) strikes the right balance for defendant, by recognizing both the seriousness of what she did as well as the strong influence Fritsch likely had over her at the time she was assisting him throughout the summer of 2025.

The maximum 3-year term of supervised release should be imposed. Fritsch remains a fugitive and may continue to be a fugitive for some time. While it is hoped and expected that defendant will not act unlawfully for Fritsch in the future, she should remain monitored by the Probation Office to ensure that she does not.

Finally, the government concurs with the Probation Officer that a fine is appropriate. This Court imposed a $35,000 fine against Fritsch for his wire fraud crime. Wire Fraud Prosecution, Dkt. 576 at 3. The government recommends a fine of 10% of that amount for defendant, or $3,500, rather than the higher amount recommended by the Probation officer.

---

[7] Fritsch's flight and defendant's role in it have received extensive media attention.

**V. CONCLUSION**

For the foregoing reasons, the Court should impose an 18-month sentence of imprisonment, and order a 3-year term of supervised release, a $100 special assessment, and a $3,500 fine.